with me as my colleague Melissa Meister. I'd like to reserve, if I may, three minutes for rebuttal. Your Honors, the government in this case has failed to follow the procedures and, more importantly, the court orders to preserve the constitutional rights and protect the attorney-client privilege of my client. Now, much is not in dispute here. As complicated as this case is,  the district court made certain findings that the government must concede, specifically about those orders. The government did not follow the search warrant requirement in terms of doing a scope review within 60 days or seeking an extension and then destroying or returning any documents that were beyond the scope of that search warrant. What has been returned? They seized some computers and other equipment? Well, not just some, Your Honor. They received actually 57 electronic devices. Okay. Have you gotten that back? The copies were imaged. No, I'm not asking you about the copies. Did you get the computers? Yes, we received the originals back. Okay. What else has not been returned? No, everything was returned, Your Honor. Everything was returned. What are we talking about then? Well, we were talking about the fact that they did not destroy and they kept these documents without following the orders on the attorney-client privilege and the scope review. When you say documents, you mean copies of the documents? Yes. All right. And they provided those copies now to state authorities. And ordinarily, in the normal case, as the district court found, the cooperation, that's not the issue. The issue is, and it's limited to this, is that there is a massive Fourth Amendment violation by not following the orders of the district court. Well, counsel, you're describing it as massive, but doesn't it come down to failure to conduct a search within 60 days and not reviewing one disk? Isn't that what the failure was? I say it's massive because of the quantity of information involved here. That's significant, Your Honor, because – Oh, okay, but they missed a deadline. That's the guts of your case is that they missed a deadline. I think the record now shows, and this is where I think Judge Otero was misled, by the affidavits submitted by the U.S. attorney on the affidavits by the FBI agents, because the scope review was not done. We know that now. The material was turned over after the feds declined the investigation to the state authorities, and you have now, at the excerpt of record, beginning on pages 39, all the way up to 80 – I'm sorry, 90 – 87, you have a log that was produced on what was already turned over to the state. These are documents that have absolutely nothing to do with the search warrant. OBGYN records of Mrs. Burham, Valentine's Day love letters from Mr. Burham to his wife. Let's stipulate they took the stuff they shouldn't have taken. You made a motion to have everything returned, and I think I heard you say everything has been returned. Your Honor, that's using just the nomenclature of the law on Rule 41, suggests that it goes far beyond simply just returning a copy. Well, what do you want? We want what the court ordered and the government refused to do. Which is what? Destroy the documents. Destroy their copies. Absolutely. Of everything, even things that were arguably relevant at the time? The non-Valentine's? I mean, not everything there was a Valentine. Your Honor, I wouldn't be here asking for anything but the privileged information and the non-scope stuff. They have a legitimate right. I mean, we can certainly challenge the search warrant. It's a terribly stale and over-broad search warrant. There's a pending motion in the state court to suppress that search warrant, and that can be dealt with there. Well, so are the stuff. Right. Now, what we have here is an appeal from the denial of a Rule 41G motion, right? Yes. That's what you're challenging. There's two orders. It was the denial of the motion for return and the granting of the order permitting all of this privileged information and non-scope stuff. Maybe we'll get to that later, but on the 41G motion, you agree that our review is governed by Ramson? Yes. All right. Now, which factors, the four Ramson factors, did the district court disregard or not meet? All four factors, I believe, weigh heavily in favor of Mr. Byrne. The first, whether the government displayed a callous disregard for the constitutional rights of the movement. Clearly, they ignored the order of the district court. Wait a minute. What's the constitutional right? This Fourth Amendment constitutional right to be free from an unreasonable search and seizure, which is exactly what took place here. The Fourth Amendment extends not just to the actual search. Well, just a minute. The 41G, are you saying, is to litigate whether or not the Fourth Amendment was violated in the initial seizures? No, not in the initial seizures, but in the procedures. Well, in the procedures that were used in terms of executing the search and following the search. The search warrant had terms that were to be followed in terms of reviewing for scope, and they were ignored, and they were not followed. Well, you used the word ignored. They weren't followed, but that doesn't necessarily suggest callous disregard. One can fail to follow for any number of reasons, including negligence, which doesn't support a Ramson finding. Your Honor, I think that there's clear evidence here that was not presented properly to the district court by the government that shows that it was not negligence. There was an email, and this is at Exhibit Record 131, from Mr. Zeitlin to another FBI agent when he found out that the scope review had not been conducted. This was in May of 2012. He writes, damn it, the extension has expired, and we did not apply for another one. It is too late. Does this mean Anthony Gordon, who's a FBI tech person, never bookmarked anything at all? That doesn't sound like anything except frustration that something didn't happen. That doesn't suggest anything about state of mind. Stopped then, Your Honor, and did nothing further. But what did he do after that? He then took all that stuff which he knew had not been reviewed, that he knew was in violation of the order, and he dumped it on the state authorities. You're absolutely right. If he would have said, oh, my gosh, I made a horrible mistake here. We all make mistakes. I make them. Everybody makes them. But when we make a mistake, we've got to stop. And he didn't stop. He took everything on his way out of Dodge because he was reassigned back to Quantico after this whole debacle, and he dumped everything on the state authorities without any guidance about scope, without any guidance about privilege. And now a separate superior court judge has had to go through all of this stuff and has found the reams of documents that are beyond the scope that are privileged attorney-client communications. Isn't that really a remedy to pursue that in state court? That's the fourth Ramston factor, and I disagree because the only remedy that the state judge has is suppression. We filed in August of last year a suppression. Why is suppression an adequate remedy? Because all that – well, there's probably not going to be a trial in this case. The whole matter is now before the state court of appeal. An OSC has been issued as to why the indictment should not be dismissed for failure to provide exculpatory evidence to the grand jury. That's a whole separate issue. But the suppression motion would simply stop the evidence from coming into a trial. These are intimate notes. This is – Mr. Burham has a privacy right in this information. He has an ongoing right to have his attorney-client communications related to an ongoing case that is being litigated in state court, protected, and not in the hands of the state prosecutor's prosecutium. Mr. Zeitlin knew exactly what he was doing when he dumped all this stuff. I mean, this is an FBI agent, frankly, out of control. And the control that was placed on him were these orders by Judge Otero. Was that turnover decision to the state prosecutor made solely by that agent independently, by himself? The turnover was done – well, I can't speak to that. I mean, we asked for an evidentiary hearing. I would love to know the answer to that question. And that's part of – and that's what I fault Judge Otero for. I mean, he relied, as we all do, as I have from time to time, on what the FBI and the U.S. attorney says to us. He was not given this information. He did not realize what was really going on over there. What I fault Judge Otero for, and at a minimum I would ask this panel for, is a remand for the evidentiary hearing. He took the representations, and it's reflected in his order. He took them at face value. Notwithstanding the fact that in an earlier Rule 41 hearing, he had made a finding that there were inaccuracies in Special Agent Zeitlin's affidavit, but nonetheless harmless error there. Same FBI agents come back with affidavits. Can I slow you down for just one second? Sorry. You've repeatedly said that the government still has all these things in their possession. I thought that there was, although belatedly, a destruction of those items that – or the data that were personal, the Valentines and so forth. You could ask Mr. Whitman, Your Honor. We have begged for that information. We have been told that that is not the case, and they have turned them over to the state authorities.  And there's a bunch of documents that are still waiting to turn over pending this court's ruling. Apparently we don't have an accounting of everything that's been turned over. How we found out about this and why we couldn't bring this up at the time was we didn't find out until this stuff started showing up in the state discovery. We couldn't believe what we were seeing, and they actually started to turn this stuff over. It had nothing to do with the state criminal case, but we were getting disks that had this irrelevant information on it, and we were able to trace it back that this came from Special Agent Seidman. And this was the stuff that was supposed to be scoped out and privileged out pursuant to the court orders. Judge Otero knew nothing about this, not until we were able – and he was just accepting the representations that the prosecutors had made. For example, in his order, and on page – excerpts of record page 13, he says – he writes, the government concedes that the FBI reviewed digital data seized from the other two locations after January 10, 2012, which was the deadline. In terms of the 41G motion, what the government has retained are copies, and you have the originals of everything as far as what you've told us today. We do now. So why is that a 41G problem for return of the property? You have the property. You have the property. You have the originals, and what is your need for the copies? This court has consistently held in the CDT case and other cases that 41G, the jurisdiction of the court, goes far beyond simply ordering a return of either the original or the copy, but can extend under appropriate circumstances, as Judge Brzezinski has noted, as numerous judges of this court have noted, to ordering the government to destroy the evidence in question. And the circumstances here, going back to the original search warrant, which included that language, to have the evidence destroyed or returned out of the government's possession. We don't want a general search warrant, and that's what happened here. Going back to the original search warrant itself, Your Honor, this was a search warrant in 2011 based on, we have the affidavit now, based entirely on a grand jury testimony that took place in May of 2011 about events that took place in 2005 and 2006. This is the most stale search warrant that I have seen in my entire career as prosecutor, judge, or defense lawyer. This was, there was no chance that anything was current was going to be found in this thing. It was executed weeks after five of the seven counts of the indictment against Mr. Burham had been dismissed by the state court. I believe this was a stalking horse. The feds literally took this grand jury testimony, which was released under the state, which was made public under the state system, dumped it into a hundred-plus page affidavit, and gave it to a magistrate judge who signed off on it. There was nothing in here that was tailored to get discoverable evidence in real time. The federal investigation went away by May of 2012, but not before they dumped all this irrelevant and privileged information into the hands of the state. Under those circumstances, Your Honor, under Rule 41Z, we believe that the appropriate remedy, as we articulated, was for a return and destruction of the evidence. The government should not have this stuff. We have privacy rights. Mrs. Burham has privacy rights. There's records in here about the dog. In some of it, but not all of it. That's correct. But now it's the privilege review was never done. Well. The scope review was never done. I mean, we did a privilege review on it. Okay. So why wouldn't, if we were to agree with your arguments otherwise, why wouldn't the result simply be to say you identify specifically, item by item, exactly what you claim is privileged, and the court will take a look at it in camera and sort the weed from the chaff? That was the original order of the federal court. We reviewed the non-digital, the 27,000 pages. We gave them a privilege log. Apparently that didn't do anything because they just turned some of that evidence over, including, just as one example, a letter, an internal letter written by John Vanderbilt, Mr. Burham's prior counsel before the indictment, that was sent to Mr. Burham, and that was turned over to the state prosecutor. So a previous effort to do this completely failed, and the government failed in that responsibility. What would you have us do now? At this point, Your Honor, at this late date, what I believe, at a minimum I'm asking for a hearing before Judge Otero so that Judge Otero, in fairness, can see this. At which you would show him what? Sorry? What would you show him at the hearing? I would show them essentially what we've laid out to this court of appeal because so much of this has come out afterwards with the privilege logs and the scope logs that have come out of the state court. And I do believe if Judge Otero realized that he had been misled by the U.S. Attorney's Office and by the FBI. Well, without calling names, why don't, I mean, I'm struggling to find out what would work here. And if the state court has already made a determination as to which documents are privileged and which ones are not, why doesn't that solve everything? Well, no, they've only done that with regard to a small portion of the documents, two disks that were produced. All of it hasn't been produced, or I don't think so. I don't know. They won't tell us what has been produced or not produced. We believe or we understand that there are more documents that they plan on shipping over. But the privilege log and the scope log was never done. At a minimum, that has to be redone. Mr. Larson, I think you said that there was no privilege review. Maybe there was not a review that, you know, the procedure ordered by the court, but there was a privilege review of some kind, right? No. Well, I spoke too broadly, Your Honor. There's two categories of documents. There's the digital documents. There were the 52 devices. We believe one of those 52 devices had some kind of review because there were bookmarks on it. That was one of Mr. Burns' home computers. The other 51 were not reviewed. Of the non-digital documents, the hard copy documents, those were reviewed by me, and that was pursuant to the court's order, and then the privilege log was turned over. But unfortunately, that privilege log apparently was ignored because some of those privilege documents, those hard documents, were then turned over to the State. I don't believe the government can be trusted at this point. Ultimately, I think Your Honor should issue an order ordering the destruction of this document and the return of all of it to Mr. Burram. In answer to Judge Graber's question, why shouldn't we say all the physical stuff has been returned, all the original stuff has been returned, as to the stuff that's copies, go now and figure out what you have a right to keep, and the rest should be destroyed? We could do that, Your Honor. I think that given the circumstances of this case, that equity, and this is an equitable exercise under Rule 41, does not warrant the government being rewarded at all at this point. It's not a matter of reward. It's a matter of figuring out what's the right answer because if it's not privileged, you know, you don't get a windfall to say, well, it may be usable against my client in a criminal matter, but gee, and it isn't privileged, but King's X. Okay. And as I said at the outset of my argument, I would not be here, Your Honor, if this was about non-privileged within scope evidence. I'd be dealing with my suppression motion in State court, which I will certainly do. But we have to, at a minimum, address this quagmire of non-scope. I mean, if you look at the law, you will see that there are just reams of it, and that's just what's been produced so far. They did a general search warrant. They went and they just grabbed everything. But the validity of the search warrant is not at issue in this matter. We have to presume it's valid and supported by probable cause because that's how the case comes to us. Your Honor, and I understand that. I'm giving that as the context as to why we now have this barrage of non-scope privileged information. That's what needs to be addressed by this Court. Mr. Larson, you're down to a question. Actually, you're over. I'm over a few minutes, and I'm sorry, Your Honor. Yeah, but you want to just give me 60 seconds on the second issue about the district court's order? The district court order granting the turnover? It's inextricably intertwined with the first, Your Honor, and I'll be very brief. There's no question that law enforcement agencies can share with other law enforcement agencies. We've all done it. That's part of what goes on. But what you can't do is be a stalking horse for another agency in violation of constitutional protections. And what happened here is the violation of the two orders, the search warrant and the other order, were conducted, and the FBI just took everything and dumped it. Judge Otero thought that this was, he says in his order, this is on excerpt of record page five, he says that courts have frequently reaffirmed the settled rule that no constitutional barrier exists to this norm of cooperative effort. And he talks about normal cooperation. I have no problem with normal cooperation. But what you can't do is violate a federal judge's order and turn over privileged and stuff that you know is privileged, or at least are being so callously reckless about because you haven't done it. So your basic argument is that this order covers. Yes. Privileged information and non-scope as well as documents that weren't properly reviewed for scope or privilege. If Judge Otero had simply said that the government can produce and turn over everything, which is non-privileged and within the scope, I wouldn't be standing here. All right. Gotcha. Thank you, Mr. Larson. All right. Thank you, Your Honor, for your indulgence. Good morning, Your Honor. Joseph Whitman for the United States. I'd like to start by just basically trying to clarify exactly what's at issue here. There's two disks containing digital data that was seized during the search as an issue. Those two disks were provided to the district attorney's office after the FBI agent. Is it true that the FBI agent who turned that material over knew he was turning over material that hadn't been properly reviewed? No, Your Honor. He didn't know that? Although he sent that email saying these haven't been reviewed? What's going on? The district court found as a factual matter that it was not intentional. There was no intentional violation. That essentially it was an honest mistake. That's supported in the record. That's what the district court found. There's no evidence of the contrary. What's the problem with ordering the district court to say, order them to go look at what's been retained, the copies, the stuff that is relevant they are entitled to keep, the stuff that has nothing to do with the case or is privileged to be destroyed? What's the problem with that? Because the district court has already made factual findings that all of the archived backup stuff has been destroyed. That's a factual finding that the court can find at excerpt of record ER-14. It's corroborated at ER-173 by a declaration of an FBI agent. I've got ER-14. Where are you referring to? I believe it's towards the top, Your Honor. It was recently destroyed. The archived backup documents were recently destroyed. While documents falling outside the scope of these warrants were only recently destroyed. That's a reference to the administrative backup documents. That was the finding of the district court. There's no evidence to the contrary. It certainly was not clear error to make that factual finding. What about his valentines and love letters? And Your Honor, may I just, one little add to that, and then I'll respond to Your Honor's question. And as far as the working volumes, the ones that they were actually working with, we submit that that was the court found as a factual matter, impliedly found that those were also destroyed. So all what's left over. The court did all this without an evidentiary hearing, right? That's correct, Your Honor. So I'd like to turn now to Judge Silverman's question. Well, no, no. Why not grant him an evidentiary hearing? Because it's not necessary, Your Honor. Why? Because the court should accept the declaration of an FBI agent without cross-examination? No, Your Honor. Because there was an enormous amount of declarations and documents submitted to the court, there was a previous evidentiary hearing, and none of the factual disputes present in the record are material enough to warrant having an evidentiary hearing. Well, what about the finding of the state superior court that lots of privileged stuff was included in the limited amount of material turned over to the state prosecutor? That's something new, isn't it, since the district court made its findings without a hearing? You're right. That is new. That evidence came basically after the district court issued its order. It was not before the district court. That's actually a good opportunity, I think, to address the hard copy documents, the so-called love letter stuff. These are the facts that are in the record about that. The FBI seized a lot of hard copy documents during the search. Within four days of the search, the government, based upon the threats and subsequent litigation, said we'll hold off on searching it for now. During that litigation, the special master order came out. With hard copy documents, what the government was supposed to do and did do was send the seized hard copy documents to Mr. Burns' attorney so he can do a privilege review and prepare a privilege lock. That's precisely what he did. Then he sent that back to the U.S. attorney's office in around February 2012. By that point, the government had already tentatively declined the investigation. So basically... Well, is there a list anywhere of exactly what you still retain? There is no list, but it is evident from the record what has been turned over, what has been retained. What has been retained, according to the record, is copies of the two disks with digital data that were turned over to the district attorney's office. Do we know what's on the disks? Is there a list of what's on the disks? There is. Somewhere there's definitely a list of what's on the disks. I mean, the defense, Mr. Burns has a copy of it. The district attorney's office has a copy of it. The FBI has a copy of it. So you've retained two? You're just talking about two disks? Two disks. Well, what about the other 50? There's 50 or so, right? May I just say what's going on with the hard copy documents? And then as far as the other 50 or so, Mr. Burns sort of tries to read between the lines in the record to say, hey, how do we know that all those things are not still in the government's possession? The answer is we look at the evidence that was submitted to the district court. We look at the district court's factual findings. And in the absence of any evidence to the contrary, the court is required... Let me just ask you a question. Does the government still have copies of those disks? Of the two disks that were turned over? Does the government still have copies of those disks? On the record. I'll say what's on the record, and then if the court wishes me to go out the record. I want your answer. Does the government have copies of those disks? Everything other than the two? No, Your Honor. The government has no more disks besides the two. Is that what you're saying? Plus the hard copy documents. Is that your representation? Yes, it is, Your Honor. And that's going outside the record to explicitly say it like that. Yes. The two disks that were turned over plus the hard copy documents the government still has, the rest of all that stuff as found by the district court, as evidenced in the record, and as based upon my outside the record now representation, based upon representations to me from the FBI, is that all of the working hard copy leftovers were destroyed. All of the administrative archive backup versions were destroyed. Why shouldn't you go back to district court and file an affidavit signed by you that says this is what we've got? Because it's not necessary, Your Honor. Well, you just told us stuff that's outside the record, so we really don't have any way to confirm it or for them to challenge it. Because it's already in the record. I mean, it's not explicit like that coming, you know. It's in the record. You just said you're speaking off the record. Well, what's in the record is sufficient to support the district court's factual finding that the administrative backup copies were destroyed, and its implied factual finding that the working review volumes were also destroyed. There is support in the record for that. And not only that, but the district court found it, and there's no contrary evidence in the record. So it's unnecessary to go back and basically submit an affidavit from the FBI saying that. Well, there's no contrary record because there was no evidentiary hearing. It wasn't necessary, Your Honor. The government's position is it wasn't necessary because the evidence in the record was sufficient. Absent any evidence to the contrary. How can they controvert it? How do they know what you destroyed and didn't destroy? And if you came up with, you said, gee, you know, we've gone through a diligent search and this is what our list is, and if it looks to be credible, you know, it's one thing to say, okay, I'll buy it. But you're kind of just winging it. It's hard to tell what has and what has not been destroyed and what you still do and still do not have. Well, because, Your Honor, we would submit that it is evident in the record, basically the agent's explanation of what the review process was, what was turned over, what wasn't. The district court found that it was evident in the record to make the necessary explicit and implied factual findings. What happened to the Valentines? Okay, Your Honor, that's actually an excellent opportunity. Here's the story or the deal with those hardcopy documents. I sort of started it before. They go over, they seize a bunch of hardcopy documents, they bring them back to the office, litigation ensues, the parties agree in the special master order that hardcopy documents will be sent to Mr. Berm's attorney to review, basically to do an initial cut for privilege and prepare a privilege lock. All of those things happen. The materials came to Mr. Berm's attorney, prepared a privilege lock, sent it back to the U.S. attorney's office in around February 2012. In the materials that he cleared for privilege, he sent us a disk, and it basically said, here's the disk, here's everything that we're not claiming privilege on. So to the extent that there were materials included on those hardcopy documents that, in fact, were privilege, that wasn't the government's error. I mean, I think that the – But do you still have copies of the Valentines? Yes, we do, because those are the hardcopy documents. By what right do you keep the Valentines? The right that we keep the Valentines is because those materials were lawfully seized pursuant to a federal search warrant. Are they relevant to anything? Apparently not. Why shouldn't you destroy them? Because they're all interspersed. When agents do searches like this, if they were to go through every single piece of paper in a huge business like that, they would be there for a month. They basically take files, they take categories of materials that they find there, they go back to their office. Okay, but now he's made a motion that I want everything that isn't relevant to the case destroyed. I'm not sure I understand why you – what basis you have to oppose that. Your Honor, as a practical matter, the reason why we're continuing to hold on to the two disks and the full range of hardcopy documents is because they're still relevant or potentially relevant to a pending state court case. But you've already said that there are clearly items that are not relevant to the state court case within the hardcopy documents. So I ask the same question of opposing counsel, but it seems to me that somebody ought to be able to take a look at the hardcopies and either return or destroy those things that are clearly not relevant to the state court proceeding and allow you to retain anything that is arguably related. And there is, Your Honor, the state court. They've done that. Mr. Berman obviously has enormous opportunity to go to state court, submit all the logs that he thinks are necessary. But you have a lot of documents that haven't been turned over to the state court yet, right? That's not correct, Your Honor. That's not borne out by the record. That is hyperbole. You mean you've turned over everything acquired from the search to the state court? We have not turned over everything acquired from the search to the state court. Well, how much have you not turned over? Well, everything that – there's the two disks and the hardcopy documents. Everything that was left over, as from the record, was destroyed. So that's basically the universe. Of the things that you still have, has everything been given to the state prosecutor? Yes, because all we have are the two disks and the hardcopy documents. Okay. So there is a remedy in state court, but does that mean that he can't get the things back or destroyed that are clearly irrelevant or that the state court has determined are either privileged or irrelevant? He shouldn't, Your Honor, under the key case, Ramsden. Your Honor, if I may submit, basically Ramsden gives this court everything it needs to gracefully resolve this appeal without getting too deep into the weeds on claims and counterclaims about logs and letters and meetings and so forth and so on. Just putting aside, we believe we should prevail on the willful callous indifference issue, but just look at two through four, the other elements. There's really no plausible claim that those other three considerations... Because there is another. What you're saying is that there clearly is another legal avenue for relief. Because he got the originals back, as Your Honor, Judge Silverman was sort of focusing on at the outset. He got all of the originals back in 2011. I mean, in all of these cases, they all basically end up where they should, which is where the district court ended up. You're faced with this kind of situation. Rule 41, Ramsden, the cases, the out-of-circuit cases like Kiddy's East, they all end up at the same place, which is a basic compromise. You got your originals back. Government got copies. Let's all go about our business. That's essentially what the district court countenanced in this case. That is the appropriate resolution. And even if the court... Another way the court can do it is they could say, look, put aside whether or not the district court should have exercised jurisdiction. Just look at the merits. What is his interest in copies of stuff that the government has that is previously given to the DA's office? What is the government? Nothing. I mean, there's nothing. And as far as what the DA's office, what the government's interest in in keeping those materials, there's a pending state court case. Theoretically, there could be a chain of custody issue or an electronic technical problem. They need another copy or something like that as far as the electronic data goes. And as far as these hard copies... I'm with you on the relevant documents. I don't follow how you get to keep his personal papers that have nothing to do with the case. Because they're all bound up in basically a big group of stuff that was seized. But because of our agreement basically to stop searching... It's one of the issues, I suppose, in general with electronic data. There's more there than is necessary. But I take it your point is that insofar as it's improper to be used in the state proceeding because it's privileged or not relevant, he has a legal remedy in state court. Of course he does, Your Honor. That's common sense. That's what the district court found. He clearly has the ability to litigate as much as he wants, and he does that in state court as reflected in the record. Suppose he wrote an intimate love letter to somebody. It's not introduced into evidence in the state proceeding, so there's no opportunity to move to suppress it. It's not offered into evidence. You still get to keep that just forever? No, not forever, Your Honor. I mean, the government intends once the state court case is over, the government basically has no interest whatsoever in supporting a prosecution by another prosecuting agency. The government intends to destroy it at that point. What's your interest in keeping irrelevant stuff in the meantime? Because it's basically all mixed up with stuff that is potentially relevant. It's being litigated in state court, and we don't think it would be responsible essentially for us to take stuff that's at issue in state court and just delete it. Because there's a possibility that they're going to need to establish that particular relevant documents are among the documents that were seized, essentially a chain of custody issue. That's possible. It's possible that electronically the disks won't work and they'll need another copy. I mean, when there's a pending state court case, the stuff that we have mixed up altogether, it's not responsible for us to just start deleting that evidence, the two disks and the hard copy documents. Mr. Woodman, your time is just about up. I want to ask you, like I asked Mr. Larson, give me a 60-second answer on the second issue, namely, you know, the district court's order on the turnover, I'll call it. But Mr. Larson's position seems to be that he'd have no objection if that order were limited to documents that have been reviewed for scope and privilege. I think it's something like that. Now, would you object to that kind of limitation on the order? As I understand now, and I think I read this, it covers all documents that you have that were seized pursuant to this warrant. Hard copy documents. Yes. Your honor, our view is that the district court basically said, give those to the special master in state court and the state court to supervise it. They can litigate what's within the scope, what's not within the scope, what's privileged, what's not privileged. That was not an abuse of discretion. Is he shirking his duty? Yeah, by saying, I'll let the state court take care of it. I'm not going to worry about this defendant's constitutional rights. Is the government shirking its duty? No. Judge Otero, by saying, no, I'm not going to worry about this, I'll let the state court worry about it. I don't believe it is shirking its duty, your honor. These materials were lawfully seized. Well, putting that aside, would you be satisfied with an order that's limited to relevant documents, you know, that have been subject to the scope and privilege review? Your honor, we wouldn't be satisfied with that. You would not? No, we would not, your honor. Because? Because the order that the district court issued was perfectly consistent with applicable law and common sense and the state court's ability to sort through these issues in the pending state court criminal case, which is the only place where anyone really cares about these documents anyway. Well, would you write it? I see. Judge, did you have something else? Judge Graber? No, thank you. Thank you, Mr. Whitten. Thank you, your honor. Mr. Larson, you're over time, but we'll give you a minute. I'll just make two brief points, your honor. First of all, with respect to the state court, the state court is waiting on this court's decision. We filed a suppression motion back in August of last year. The hearing on that motion has been continued four times with the court inquiring what's going on with the appeal. This is a federal matter, a federal search warrant issued by federal agents and a federal magistrate judge. A federal court needs to resolve this issue. It is against public policy, I would submit, to pass the buck on this to the state court. Second of all, the only remedy available to the state court judge is suppression. I believe this case is on appeal to the court of appeal right now, the state case. It is likely to be thrown out by that court of appeal. It's issued an OSC. There may never be a case. And here out in another world, in the feds, in the states, are all of this private, privileged information. That has to be returned, and it is federal judges that need to take control of this case. Thank you, Mr. Clark. Mr. Whitten, thank you. The case just argued is submitted. Good morning, gentlemen.
judges: Tashima, Silverman, Graber